J. H. LOWERY, plaintiff in error, *vs.* J. E. DAVIDSON *et al.*, executors, defendants in error.

1. When an exemplification of the probate of a will in another State is filed in the Clerk's office in this State under the provisions of the 2414th section of the Code, properly authenticated according to the law of the State of the testator's domicil, it is sufficient to authorize the executors of the testator to sue in the Courts of this State.

2. Certain cotton receipts were given to Davidson, the testator, in his lifetime, by the defendant, subject to the demand of Davidson or his order, and on the back thereof was written, "Deliver to T. N. Johnson, or order. W. Davidson:"

*Held*, that this did not vest the title to the cotton in Johnson as against Davidson's legal representatives, but that it was competent to prove by Johnson that he was merely the agent of Davidson to receive the cotton and had no personal interest in it, and that the indorsement on the back of the receipt was made for that purpose only.

3. When a defendant, in a Court of law, seeks to avoid his contract on the ground of *mistake*, he must, by his pleadings, allege the grounds of the mistake as fully as he is required to do in a Court of equity to entitle him to relief.

Administrators and Executors.    Evidence.    Pleading. Before Judges ANDREWS and GIBSON.    Richmond Superior Court.    January Term, 1871.

The executors of William Davidson averred that, on the 1st of February, 1863, he owned and possessed twenty-eight bales of cotton, that they were casually lost, that Lowery found them, and, on the 30th of September, 1866, converted them to his own use to their damage, etc.  On the trial, to show their authority to sue as executors, they offered in evidence a copy of Davidson's will and their letters of executorship, which were authenticated by a certificate purporting to be made in Charleston District, South Carolina, and which concluded as follows:  "And I do further certify that I am sole Judge of the Court of Ordinary of Charleston District in said State, and there is not, by law, any Clerk of said Court, and that, in my official capacity as Judge, I am, also, *ex officio*, in the law, the sole Clerk, nor is there any other officer of said Court, nor any other Judge, Chancellor or Vice-Chancellor of the said Court, having supervision of the acts of the Judge of the Court of Ordinary of the District and State aforesaid.  And I do further certify that the said Court is a Court of record, and that the records of said office are in my sole possession, keeping and custody and under my sole control; and I do further certify that this testimonial and the foregoing attestation is in due form of law."  It was signed by him officially, "George Buist, Judge of Probate," and to it was attached the official seal of said Court.  Defendant's counsel objected to this evidence because it was not certified by the Clerk of the Court but by its Judge.  The objection was overruled and the paper was read as evidence.

Plaintiff's counsel next read in evidence two receipts headed "J. H. Lowery, Warehouse and Commission Merchant, Augusta, Georgia"—one dated the 1st of February, 1863, the other without a date, each signed "John Holmes, for the proprietor," each acknowledging the receipt of fourteen bales of cotton from William Davidson, "marks, etc., as per margin, subject to this receipt or his order," on paying, etc.

On the margin of each receipt were numbers from one to fourteen, and opposite each number the weight of a bale of cotton. Under the heading "marks," on the dated receipt, there was nothing; in the other receipt there were the letters "H D F." On each receipt was indorsed: "Deliver to T. N. Johnson, Esq., or order. W. Davidson."

They then proved the demand of said cotton from Lowery and his refusal to deliver it before the action was begun, and the value of the cotton, and closed. Defendant's counsel moved for a non-suit upon the grounds that it was not shown, by legal evidence, that said plaintiffs were Davidson's executors, for the reason aforesaid as to said certificate, and because, by said indorsement on the receipts, the right to sue was out of them and in Johnson. The Court refused the non-suit.

Plaintiff's counsel then asked to open the cause to prove by Johnson that the indorsement to him was simply to enable him, as Davidson's agent, to get the cotton, and that he had no interest in it. This was objected to upon the ground that it was varying a written contract by parol, but the Court allowed Johnson to be examined, and he so testified. Plaintiff's witnesses to the demand testified that when Lowery refused to deliver the cotton, he said he could not because he had delivered it to Dr. Hall. This Dr. Hall testified that, during the war, when the Confederate States authorities were seizing houses for storage, Lowery told him that he had in his warehouse twenty-eight bales of cotton belonging to the estate of George Y. Davis, deceased, and that he, Hall, had better take it away, and he did take it; that soon after Davis' death said Johnson seemed to know all about Davis' affairs, gave Hall information as to Davis' property, said he had a claim against the estate of Davis, and spoke of this cotton several times, and Hall promised to pay his claim, which was for burial expenses of Davis, when he sold said cotton. Hall sold the cotton and paid Johnson's bill to Johnson or his clerk or agent. Johnson seemed solicitous about Davis' affairs and relatives, asked frequently about

them, and asked for, and got from Hall, Davis' watch to send to Davis' relatives. Afterwards Johnson's clerk presented to Hall these said receipts, and said Johnson wished to know if he knew anything of the cotton therein mentioned. This was the first Hall had ever heard of any counter-claim to this cotton, and from the facts aforesaid he had no doubt but that Johnson at first knew that the cotton which he had sold, and out of which Johnson's claim was paid, was the cotton which came. from Lowery's. Defendant's counsel offered in evidence defendant's books of original entries to show that the cotton called for by said receipts was stored with him by Davis, and was his, and that the receipts to Davidson were issued by a clerk by mistake. The Court ruled that the books were inadmissible.

In rebuttal, Johnson testified that he had no recollection of Hall's paying his claim for burial expenses of Davis ; that he got said watch to send to Davis' sister, and sent it ; that he knew nothing about Davis' business, never had a business transaction with him ; that he and Davis were refugees from Charleston, Davis was an old and respectable citizen of Charleston, sojourning at Hamburg, buying cotton for Davidson and others in Augusta, and when Davis was sick he waited on him, and when he died, buried him at his own expense ; being a trifling expense, as it was paid in Confederate money. He gathered up his personal effects, and handed them to the Clerk of the Superior Court and Hall for administration, and never knew that he had any cotton. He got the watch upon the application of Davis' sister, who resided in Philadelphia. This is the only business he had with the estate.

After argument had the jury retired to consider of their verdict. While they were out defendants' attorneys, as it is alleged, accidentally discovered among some papers in the cause, and which had been in possession of plaintiff's counsel, a receipt from defendant to George Y. Davis, in his lifetime, for the storage of twenty-eight bales of cotton, dated the 1st of February, 1863, at the beginning, and ending with

the payment of storage on the 5th of January, 1864.  There was no other mark to show that it was for the cotton sued for.  They made no mention of the discovery, so far as the record shows, until after the jury rendered a verdict for the plaintiff.

Defendant's counsel moved for a new trial upon the grounds that Judge Andrews, who presided on the trial, erred in admitting said record as evidence; in refusing to non-suit plaintiffs; in allowing the cause opened for Johnson's testimony, and in allowing him to testify in explanation of the indorsement of the receipts to him; in rejecting defendant's books; because of said newly discovered evidence, and because the verdict was contrary to law, etc.  The motion recited the finding of said receipt as aforesaid, and that its existence was unknown to defendant and his counsel before, but this was not supported by any affidavit.  The motion was heard before Judge Gibson, who refused a new trial. Error is assigned upon each of said points.

J. C. SNEAD; CLAIRBORNE SNEAD, for plaintiff in error.

McLAWS & GANAHL, for defendant.

WARNER, Judge.

This was an action of trover brought by the plaintiffs against the defendant to recover the value of twenty-eight bales of cotton.  The plaintiffs sued as the executor and exexecutrix of William Davidson, who died in the State of South Carolina.  The plaintiffs had filed in the Clerk's office of the Superior Court an exemplification from the record of the Court of Probate of South Carolina, showing the probate of the will of the testator, and the appointment of the plaintiffs as his executors in that State, and relied on the same as evidence of their right and title to maintain their action against the defendant in the Courts of this State, under the provisions of the 2414th section of the Code.  This record was objected to on he ground that it was not certified to by

Lowery *vs.* Davidson *et al.*

a Clerk.   The record was certified to by the Judge of Probate, in which he states that, by the law of that State, there is no Clerk of his Court, that in his official capacity as Judge, he is also *ex officio*, in the law, the sole Clerk thereof, and that this testimonial and the foregoing attestation are in due form of law.   In our judgment, this record was properly authenticated according to the law of the State of the plaintiffs' domicil, so as to entitle them to sue in the Courts of this State, under the provisions of the Code before cited, as exectors of the deceased testator.   On the trial of the case the jury found a verdict for the plaintiffs, and a motion was made for a new trial, which was overruled by the Court, and the defendant excepted.   There was no error in admitting the evidence in explanation of the indorsement on the cotton receipts which made the cotton subject to the demand of Davidson, or to his order.   The indorsement on the back of the receipts is in the following words: "Deliver to T. N. Johnson, Esq., or order.   W. Davidson."   The evidence of Johnson shows that¦ the indorsements on the back of the cotton receipts were only intended to give him authority as the agent of Davidson to receive the cotton; that he had no personal interest in it, and acted only as agent.   This did not vest the title to the cotton in Johnson as against Davidson, for whom he was acting merely as the agent, or as against his legal representatives.   There was no error in rejecting the books of the defendant in evidence for the purpose of showing that the receipts for the cotton were given to Davidson, instead of to Davis, by mistake, under the pleadings and evidence in this case.   If a defendant in a Court of law seeks to avoid his contract on the ground of *mistake*, he must, by his pleadings, allege the grounds of the mistake as fully in a Court of law as he is required to do in a Court of equity, so as to give the adverse party notice, before he can introduce evidence of such mistake, in order to avoid the contract on that ground.   There is no allegation in the defendant's plea that the contract set forth in the receipts was the result of

either accident or mistake, so as to enable him to avail himself of that equitable ground of defense in a Court of law. Besides, it is not very apparent how the defendant's books, containing his own acts, would conduce to show his mistake in giving the receipts for the cotton to Davidson. It may may be true that the defendant's books show that the storage on the cotton was paid by Davis, which might have been done as the agent of Davidson, and the fact that the receipts given to Davis by the defendant for the storage are now found in the hands of Davidson's executors, would seem to look that way, although the defendant makes the discovery of that fact a ground for a new trial, as being newly discovered evidence. In view of the facts of this case, as disclosed by the record, we are unable to find any legal ground on which to reverse the judgment of the Court below.

Let the judgment of the Court below be affirmed.